**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

WILLIAM GERALD PRUITT,  :
   :
   Petitioner,  :
   :   CASE NO. 4:17-cr-57-CDL-MSH
v.   :   CASE NO. 4:22-cv-4-CDL-MSH
   :   28 U.S.C. § 2255
UNITED STATES OF AMERICA,  :
   :
   Respondent.  :
_____

## REPORT AND RECOMMENDATION

Pending before the Court are Petitioner's motion and amended motion to vacate (ECF Nos. 102, 109), motion for new trial (ECF No. 103), and motion for issuance of subpoenas (ECF No. 127). For the reasons stated below, the Court recommends that Petitioner's motions be denied.

## BACKGROUND

On November 13, 2018, a federal grand jury returned a superseding indictment against Petitioner, charging him with the following two counts: (1) attempted sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a), (e), and (2) attempted coercion and enticement of a minor in violation of 18 U.S.C. §§ 2251(a), 2422(b), and 2427. Superseding Indictment 1-2, ECF No. 33. On January 9, 2019, Petitioner pleaded not guilty to the superseding indictment. Plea Sheet 1, ECF No. 37.

Petitioner's trial commenced on March 4, 2019. Trial Tr., vol. I, ECF No. 86. Officer Alan Wilkerson testified that in November 2017, he acted as an "undercover

chatter" in a sting operation designed to investigate individuals seeking minors.  *Id*. at 66. Using Craigslist, Officer Wilkerson adopted the persona of Brianna, a fourteen-year-old girl, and posted an ad stating she was home alone for the weekend and "looking for new friends."  *Id*. at 66-69.  The ad was tailored to reflect that a younger female posted it, using words like "LOL," "princess" and "yay."  *Id*. at 69.  The ad also listed a cell phone number to contact.  *Id*. 69-70.

Five hours after Officer Wilkerson posted the ad, Petitioner texted Officer Wilkerson/Brianna.  Trial Tr., vol. I, 71.  The two texted over the next three days, wherein Brianna stated she was fourteen years old, yet Petitioner continued his pursuit.  *Id*. at 74-82.  Petitioner stated multiple times his desire to meet up with Brianna to have sex.  *Id*. The two settled on a time to meet—the night of November 12, 2017, at 8:00 p.m. in Columbus, Georgia.  *Id*. at 82-84.

Prior to the meeting, Petitioner requested a picture, and Officer Wilkerson sent a photo of a redheaded, white female holding a piece of paper stating, "I'm Brianna, and I'm real."  *Id*. at 84.  Due to the Internet Crimes Against Children ("ICAC") rules, Officer Wilkerson was prohibited from sending a photograph of a real minor, so the photo was of another individual in law enforcement.  Trial Tr., vol. I, 84-85.  Petitioner responded that Brianna was beautiful.  *Id*. at 85.

Later that night, Petitioner drove to Columbus, Georgia to meet and have sex with Brianna, the fourteen-year-old girl.  *Id*. at 90-98.  Brianna told Petitioner to meet first at a gas station.  *Id*. at 96.  Upon arrival at the gas station, Petitioner then drove to Brianna's house.  *Id*. at 99.  Petitioner was arrested when he arrived.  Trial Tr., vol. I, 100.  Officer

Wilkerson learned that Petitioner traveled from North Carolina to meet Brianna. *Id*. at 100.

Officer Myles McLaughlin, a special agent with the Federal Bureau of Investigation ("FBI"), testified that he was present when Petitioner was arrested. Trial Tr., vol. I, 116-17. Petitioner brought with him to the house a Wal-Mart bag containing condoms and pantyhose. *Id*. at 118-19. After signing a Miranda waiver, Officer McLaughlin interviewed Petitioner where he admitted to having sexual desires of underage girls previously. *Id*. at 122-23, 129. Petitioner denied, however, having ever acted on these desires—apart from the encounter with Briana. *Id*. at 129, 141.

During closing arguments, Petitioner's trial counsel discussed the lack of predisposition in this case. Trial Tr., vol. II, 31-32, 36, ECF No. 86. She argued Petitioner's employment at an elementary school without issue along with his lack of child pornography demonstrated that he was not predisposed to having sex with a minor. *Id*.

Following closing arguments, the trial judge instructed the jury on the charges against Petitioner, as well as the defense of entrapment. *Id*. at 58-59. The jury deliberated for three days before returning a verdict of not guilty on count one. Trial Tr., vol. IV, at 26, ECF No. 89. Because there was a hung jury as on count two, however, the trial judge gave the jury an *Allen* charge. *Id*. at 26-27; *see also Allen v. United States*, 164 U.S. 492 (1986). The jury subsequently returned a verdict of guilty on count two. *Id*. at 35. Judgment was entered against Petitioner on June 6, 2019. J. 1, ECF No. 70. He was sentenced to 120 months' imprisonment and ten years' supervised release. *Id*. at 2-3.

On June 11, 2019, Petitioner appealed his conviction to the Eleventh Circuit Court of Appeals (ECF No. 76). He asserted two grounds—prosecutorial misconduct and trial

court's abuse of discretion in giving the *Allen* charge. *United States v. Pruitt*, No. 19-12237, at *2 (11th Cir. Feb. 24, 2021), ECF No. 100. The Eleventh Circuit affirmed Petitioner's conviction on February 24, 2021. *Id*. at *6.

The Cout received Petitioner's motion to vacate (ECF No. 102) and motion for new trial (ECF No. 103) on January 10, 2022. The Government responded (ECF No. 106) to the motion for new trial on January 13, 2022. The Court received Petitioner's amended motion to vacate (ECF No. 109) on February 28, 2022. The Government responded (ECF No. 117) to the motion to vacate on April 8, 2022. The Court received Petitioner's motion for issuance of subpoenas (ECF No. 127) on July 11, 2022. Petitioner's motion and amended motion to vacate are ripe for review.

## DISCUSSION

### I.      Motion to Vacate

Petitioner raises four grounds for relief in his motion to vacate: (1) ineffective assistance of counsel, (2) witness issues, (3) jury bias, and (4) ineffective assistance of appellate counsel. Mot. to Vacate 1-3, ECF No. 102; Am. Mot. to Vacate 2-8, ECF No. 109. Respondent argues Petitioner's motion should be denied on all grounds. Resp. in Opp'n 7-23, ECF No. 117. The Court agrees and recommends that Petitioner's motion to vacate be denied.

#### A.      Ineffective Assistance of Trial Counsel

Petitioner argues trial counsel was ineffective for (1) failing to assert an entrapment defense, (2) failing to investigate and subpoena witnesses, (3) failing to call certain witnesses, and (4) representing him with a conflict of interest. Mot. to Vacate 1-3; Am.

4

Mot. to Vacate 2, 7.  As explained below, Petitioner fails to show ineffective assistance of trial counsel.

    *1.    Standard*

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).  A petitioner's burden when bringing an ineffective assistance claim "is not insurmountable" but "is a heavy one."  *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000).  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish, by a preponderance of the evidence, that his attorney's performance was deficient and that he was prejudiced by the inadequate performance.  *Id.* at 1312-13; *Strickland*, 466 U.S. at 687.

To establish deficient performance, a petitioner must prove their counsel's performance "was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  To show that counsel's performance was unreasonable, a petitioner must establish that no competent counsel would have taken the action in question.  *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam).  There is a strong presumption that the challenged action constituted sound trial strategy.  *Chateloin v. Singletary*, 89 F.3d 749, 752 (11th Cir. 1996).

To satisfy the prejudice prong, a petitioner must show there is a reasonable probability that, but for counsel's inadequate representation, "the result of the proceeding

would have been different." *Meeks v. Moore*, 216 F.3d 951, 960 (11th Cir. 2000) (quoting *Strickland*, 466 U.S. at 694). If a petitioner fails to establish that he was prejudiced by the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

### 2.   *Entrapment Defense*

First, Petitioner argues his trial counsel was ineffective for failing to assert an entrapment defense. Mot. to Vacate 1, ECF No. 102. This claim is directly contradicted by the record. The trial transcripts clearly show trial counsel asserted the entrapment defense and the Court instructed the jury of it. Trial Tr., vol. II, 31-32, 36, 58. Thus, Petitioner's claim is contradicted by the record and, therefore, is frivolous.

### 3.   *Witnesses*

Petitioner's second and third claims for ineffective assistance, considered together, deal with trial counsel's alleged failure to investigate, subpoena, and call certain witnesses for trial. Mot. to Vacate 2; Am. Mot. to Vacate 2, 7. This claim also fails. "Deciding which witnesses to call 'is the epitome of a strategic decision, and it is one that [the court] will seldom, if ever, second guess.'" *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018) (per curiam) (quoting *Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009)). Here, Petitioner provides no information as to which witnesses trial counsel should have called, what information they would have provided, or how their testimony would have affected the outcome of his trial. Moreover, "[d]efense counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim." *U.S. v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981) (citation omitted). Thus, Petitioner has not met his burden

of establishing trial counsel's deficient performance in failing to investigate, subpoena, or call these unnamed witnesses.

### 4.    Conflict of Interest

Finally, Petitioner argues trial counsel was ineffective due to a conflict of interest. Mot. to Vacate 3.  This claim is meritless.  To demonstrate that counsel's conflict of interest amounted to ineffective assistance of counsel, "a defendant must show *first*, that his attorney had an actual conflict of interest, and *second*, that the conflict adversely affected counsel's performance." *Pegg v. U.S.*, 253 F.3d 1274, 1277 (11th Cir. 2001) (emphasis in original).  As to the first prong, the alleged conflict must be "actual, not merely hypothetical or speculative." *McConico v. State of Ala.*, 919 F.2d 1543, 1546 (11th Cir. 1990) (citations omitted).  "[A] § 2255 petitioner must show 'inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action.'" *Pegg*, 253 F.3d at 1277 (quoting *McConico*, 919 F.2d at 1546).

Petitioner's claim is plainly speculative.  He argues trial counsel had conflicting interests in representing him because trial counsel previously represented a different defendant who pleaded guilty to the same criminal charges.  Mot. to Vacate 3.  Petitioner, however, fails to present any evidence showing he and the former defendant had conflicting interests.  He does not suggest the former defendant played any role in forcing trial counsel to choose between the two defendants' interests.  Nor is it even clear when trial counsel represented this other defendant.  This is plainly an insufficient claim. *Kennedy v. United States*, 799 F. App'x 697, 700 (11th Cir. 2020) ("A mere speculative, hypothetical, or possible conflict of interest is insufficient to establish an ineffective-assistance claim.")

(per curiam).  Therefore, Petitioner has not shown trial counsel was ineffective due to a conflict of interest.

C.    Witnesses

Petitioner raises two Sixth Amendment violations relating to witnesses: (1) he was not permitted to confront the "woman in the picture" and (2) he could not call "as many witnesses as it takes" in support of his defense.  Mot. to Vacate 2; Am. Mot to Vacate 5-8. Petitioner's claims are without merit.

1.    *Confrontation Clause*

The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  "The Confrontation Clause serves to 'ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.'"  *United States v. Taylor*, 688 F. App'x 638, 642 (11th Cir. 2017) (per curiam) (quoting *Maryland v. Craig*, 497 U.S. 836, 845 (1990)).  In doing so, "[i]t applies to witnesses against the accused—in other words, those who bear testimony."  *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (internal quotation marks omitted).

Petitioner contends his inability to cross-examine the "woman in the picture" violated the Confrontation Clause of the Sixth Amendment.  Mot. to Vacate 2; Am. Mot. to Vacate 5.  Petitioner's claim is frivolous.  His sole contention surrounds a person who was not a witness—namely, the other law enforcement individual depicting Brianna in the picture.  However, it was Officer Wilkerson who adopted the persona of the minor and

communicated with Petitioner. The woman in the picture did not "bear testimony" or otherwise provide any information relating to Petitioner's role in the crimes charged. Thus, the other law enforcement officer's role entailed nothing more than providing a picture of herself which was altered to resemble a minor.

Moreover, even if this picture could be considered testimonial, the Government did not provide it for the truth of the matter asserted. The Supreme Court has defined testimony as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact[.]" *Davis v. Washington*, 547 U.S. 813, 821 (2006). Here, while the picture was edited to resemble a young female, the Government never suggested the woman in the picture was in fact a minor, nor was that required to secure a conviction against Petitioner. *See* 18 U.S.C. § 2422(b); *see also U.S. v. Yost*, 479 F.3d 815, 819 n.2 (11th Cir. 2007) ("[A]n actual minor is not required for a Section 2422(b) attempt conviction."). Thus, the picture of the law enforcement officer was not testimonial, and therefore, Petitioner's Sixth Amendment right to confront witnesses against him was not violated.

### 3. *Right to Call as Many Witnesses as Needed*

Pursuant to the Sixth Amendment, a criminal defendant has the right "to have compulsory process for obtaining witnesses in his favor[.]" U.S. Const. amend. VI. This right is also secured through the Fifth Amendment's due process clause. *See* U.S. Const. amend. V; *U.S. v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004). This right, however, is not boundless. *See Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."). When a defendant asserts his right to

present witnesses was violated, the Court applies a two-step analysis: (1) "whether this right was actually violated," and (2) "whether this error was 'harmless beyond a reasonable doubt' under *Chapman v. California*, 386 U.S. 18 (1967)." *Hurn*, 368 F.3d at 1362-63. Petitioner fails to show a violation of his right to call witnesses in his favor.

Petitioner claims his Sixth Amendment right was violated because he was not permitted "to call as many witnesses as it takes to prove [his] defense." Am. Mot. to Vacate 8. As stated, however, this right is not unfettered. The United States Supreme Court has clarified that a defendant "cannot establish a violation of his constitutional right to compulsory process merely by showing that [he was] deprived . . . of . . . testimony. He must at least make some plausible showing of how [the] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). Petitioner makes no such showing. He does not specify what witnesses should have been called, what information they would have provided, nor how their testimony would have assisted his defense. Therefore, Petitioner fails to show his right to call witnesses in his favor was violated.

C.     Jury Bias

Petitioner asserts two jury issues in seeking habeas relief: (1) he ate lunch with a juror during the week of his trial, and (2) an all-female jury was biased against him. Mot. To Vacate 2. These claims are meritless.

*1.     Lunch With Juror*

The Sixth Amendment affords criminal defendants the right to a fair and impartial jury at trial. U.S. Const. amend. VI. "The constitutional standard for juror impartiality is

whether the juror 'can lay aside his opinion and render a verdict based on the evidence presented in court.'" *United States v. Simmons*, 961 F.2d 183, 184 (11th Cir. 1992) (quoting *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984)).  When a juror's impartiality is challenged, the party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993).  When the alleged bias involves outside evidence, "the party alleging misconduct [must] make[] an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." *United States v. Barshov*, 733 F.2d 842, 851 (11th Cir. 1984) (citation omitted).  The allegations, however, "must be something more than mere speculation." *Id*.

Petitioner's claim is wholly speculative.  Petitioner states he and a friend "ate lunch with" an unnamed juror but does not state whether the three conversed or, if so, what the conversation entailed.  Mot. To Vacate 2.  Notably, Petitioner does not suggest this alleged lunch affected his trial, but merely asks whether it did.  *Id*.  Thus, there is no "colorable showing that the conduct complained of impugned in any way the integrity of the trial process[.]" *Barshov*, 733 F.3d at 852.  Accordingly, Petitioner's claim of jury bias is speculative and meritless.

### 2.    *All Female Jury*

"[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a

man." *J.E.B. v. Alabama*, 511 U.S. 127, 146 (1994). "Parties may" otherwise "exercise their peremptory challenges to remove from the venire any group or class of individuals normally subject to rational basis review[.]" *Id*. at 143, 146 (internal quotation marks omitted). When a criminal defendant challenges a peremptory strike as discriminatory, the Court applies a burden-shifting framework. "First, the defendant must make out a prima facie case by showing that the totality of the relevant facts give rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the . . . exclusion by offering permissible [gender]-neutral justifications for the strikes. Third, if a [gender]-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful . . . discrimination." *Johnson v. California*, 545 U.S. 162, 168 (2005) (internal quotation marks omitted).

Petitioner fails to meet this standard. He provides no facts whatsoever regarding the prosecutor's use of peremptory strikes. Rather, he conclusively suggests that "an all women jury was bias against" him because they "had their mind made up before" the trial started. Mot. to Vacate 2. Without pointing to any evidence suggesting the prosecutor only struck men to intentionally keep all men off the jury, Petitioner has not made out a prima facie case of discrimination in jury selection. *Johnson*, 545 U.S. at 169.

B.     Ineffective Assistance of Appellate Counsel

Petitioner argues his appellate counsel was ineffective for failing to raise each of the issues Petitioner now asserts in his motion to vacate. Mot. to Vacate 3; Am. Mot. to Vacate 2-9. Petitioner's claim is without merit.

The standard for ineffective assistance of appellate counsel is a "slight variation" on the *Strickland* test. *Hall v. Warden, Lee Arrendale State Prison*, 686 F. App'x 671, 677 (11th Cir. 2017) (per curiam).  To prevail, a petitioner "must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal." *Id*.  He must then "show a reasonable probability that, but for his counsel's unreasonable failure [ ] he would have prevailed *on his appeal*." *Id*. at 677-78 (emphasis in original).  "[A] criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal" and "experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Payne v. U.S.*, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam) (citations omitted).  As such, "it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues." *Id*.

Appellate counsel raised two grounds on appeal—prosecutorial misconduct and abuse of discretion in giving the jury an *Allen* charge. *Pruitt*, No. 19-12237, at *2. Although the Eleventh Circuit upheld Petitioner's conviction, these were both reasonable arguments for appellate counsel to raise.  As discussed above, however, Petitioner's federal habeas claims are frivolous.  Thus, even had appellate counsel raised these issues of ineffective assistance of trial counsel, witness issues, and jury bias, they would have been unsuccessful.  "Appellate counsel is not ineffective for failing to raise claims reasonably considered without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). As such, Petitioner's fails to show ineffective assistance of appellate counsel.

## II.     Motion for New Trial

Petitioner moves for a new trial, reasserting the same grounds as those in his habeas petition.  Mot. for New Trial 1-3, ECF No. 103.  Respondent argues Petitioner's motion is untimely and should be denied.  Resp. in Opp'n 2-3, ECF No. 105.  The Court agrees and recommends Petitioner's motion be denied.

Pursuant to Federal Rule of Criminal Procedure 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a). If the motion is based on newly discovered evidence, it must be filed within three years of the verdict.  *Id*. at 33(b)(1).  For any other ground, the defendant must file the motion for new trial within fourteen days of the verdict.  *Id*. at 33(b)(2).  Petitioner does not assert newly discovered evidence, so he must have sought a new trial within fourteen days of the jury's verdict on March 7, 2019.  Petitioner, however, waited almost three years before filing this motion on January 10, 2022.  Therefore, Petitioner's motion for new trial is untimely and should be denied.

## III.    Certificate of Appealability

Rule 11(a) of Rules Governing Section 2255 Cases in the United States District Court provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a court denies a collateral motion on the merits, this standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*,

14

529 U.S. 473, 484 (2000).  When a court denies a collateral motion on procedural grounds, this standard requires a petitioner to demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. at 478.  Petitioner cannot meet either of these standards and, therefore, a certificate of appealability in this case should be denied.

## CONCLUSION

For the reasons stated above, the Court RECOMMENDS that Petitioner's motion and amended motion to vacate (ECF No. 102, 109) and his motion for new trial (ECF No. 103) be DENIED.[1]  Additionally, a certificate of appealability should be DENIED. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within FOURTEEN (14) DAYS after being served with a copy hereof.  The district judge shall make a de novo determination of those portions of the Recommendation to which objection is made.  All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives

---

[1] Also, before the Court is Petitioner's motion for issuance of subpoenas (ECF No. 127).  Petitioner seeks to subpoena the phone company to obtain "the original text messages" which could help establish his innocence.  Mot. for Issuance of Subpoenas 1, ECF No. 127.  In light of the Court's recommended denial of Petitioner's motion to vacate, the Court further RECOMMENDS that Petitioner's motion for issuance of subpoenas (ECF No. 127) be DENIED as moot.

the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

SO RECOMMENDED, this 16th day of August, 2022.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE